UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

THRASH COMMERCIAL CONTRACTORS, INC.           PLAINTIFF

VS.                      CIVIL ACTION NO. 3:11CV577TSL-MTP

TERRACON CONSULTANTS, INC.               DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on cross-motions by plaintiff
Thrash Commercial Contractors, Inc. (Thrash) and defendant
Terracon Consultants, Inc. (Terracon) for partial summary judgment
on Terracon's third and fourth affirmative defenses, which seek to
limit Thrash's recoverable damages in this case based on a
limitation of liability provision and waiver of consequential
damages provision in the contract that is the subject of Thrash's
claims in this cause.  By its motion, Thrash seeks a ruling that
the subject provisions are void and unenforceable; Terracon, on
the other hand, has moved the court to enforce both provisions and
thereby limit Thrash's recovery in this cause to $50,000, in
accordance with the limitation of liability provision, and to
dismiss Thrash's claim for lost profits and loss of use, pursuant
to the contract's waiver of consequential damages provision.

The following facts are undisputed.  On April 27, 2010,
Thrash contracted with the Mississippi Bureau of Buildings and
Grounds (the Bureau) to serve as general contractor for the

renovation of the Naval Reserve Records Center in Jackson, Mississippi.  Subsequently, on June 14, Thrash subcontracted Terracon to perform "laboratory testing of proposed fill materials to determine compliance with the project specifications ... to determine the in-place density, moisture content and compaction level achieved on each lift of the compacted materials" in accordance with the plans and specifications set forth in the prime contract.  Thrash alleges that rather than testing the soil density of the fill material every 1,000 square feet, as required by the project plans and specifications, Terracon tested soil density only every 2,500 square feet, in violation of the specifications.  According to Thrash, when this error was discovered, the Bureau and project architect required Thrash to hire an independent testing lab to determine whether the fill material met the required soil density level.  The independent testing lab's results showed that, in fact, the required soil density level had not been achieved, and as a result, the Bureau and project architect required Thrash to remove the top six feet of fill material and the already installed concrete footings for the foundation and reinstall both in accordance with the plans and specifications.[1]  Thrash filed the present action alleging claims

---

[1]     Terracon apparently takes the position that Thrash's claimed losses were caused, at least in part, by Thrash's failure to notify and schedule Terracon's services, as required by the parties' agreement.  Barton Schreiner, a professional engineer employed by Terracon, explains in an affidavit that Terracon

for breach of contract and breach of the duty of good faith and fair dealing and seeking to recover the approximately $300,000 it contends it was required to spend due to Terracon's alleged "failure to perform soil density tests in accordance with the Project plans and specifications and/or identifying and notifying Thrash of specific instances in which the soil density tests did

_____

tested the first 8 feet of fill installed by Thrash every 2,500 square feet as is usual and customary in the industry, and this 8 feet of fill material passed the compaction and density testing. Schreiner states that while the testing of this material at 2,500 square feet was a broader spacing than the 1,000 square feet spacing stated in the specifications, the project architect did not require the removal of this material, and it was not removed by Thrash.

Subsequently, 6 feet of fill was installed by Thrash above grade (and above the initial 8 feet of fill). Schreiner states that while Thrash was responsible under the terms of the contract for notifying and scheduling Terracon's services, Thrash failed to schedule Terracon's inspection services. Ultimately, when it was determined that the 6 feet of fill installed above grade did not meet density requirements, Thrash had to remove the fill and reinstall it.

The court accepts these facts as true, since they are not challenged by Thrash. However, it appears their only relevance on the present motions is to support Terracon's position that the undisputed facts refute Thrash's argument that Terracon's alleged breach was intentional. Terracon does not challenge Thrash's assertion that a limitation of liability or waiver of consequential damages provisions is not enforceable to the extent of any loss suffered as a result of an intentional breach of contract, but it submits that the facts simply do not support an intentional breach of contract.

In the court's opinion, while the facts cited by Terracon may bear on causation–which is not an issue on which Terracon has sought summary judgment––Thrash's failure to schedule testing on the 6 feet of fill installed above grade does not bear on whether Terracon's admitted failure to test the initial 8 feet of fill at 1,000 square feet in accordance with the Project specifications was intentional.

or should have indicated non compliance with the compaction requirements in the Project plans and specifications."[2]

Terracon filed its answer denying it breached the contract and raising affirmative defenses based on two provisions in the contract, a limitation of liability provision and a waiver of consequential damages provision.  These provisions appear in the contract, in bold, capitalized letters, as follows:

> **LIMITATION OF LIABILITY.  CLIENT AND CONSULTANT HAVE EVALUATED THE RISKS AND REWARDS ASSOCIATED WITH THIS PROJECT, INCLUDING CONSULTANT'S FEE RELATIVE TO THE RISKS ASSUMED, AND AGREE TO ALLOCATE CERTAIN OF THE RISKS, SO, TO THE FULLEST EXTENT PERMITTED BY LAW, THE TOTAL AGGREGATE LIABILITY OF CONSULTANT (AND ITS RELATED CORPORATIONS AND  EMPLOYEES) TO CLIENT AND THIRD PARTIES GRANTED RELIANCE IS LIMITED TO THE GREATER OF $50,000 OR ITS FEE, FOR ANY AND ALL INJURIES, DAMAGES, CLAIMS, LOSSES, OR EXPENSES (INCLUDING ATTORNEY AND EXPERT FEES) ARISING OUT OF CONSULTANT'S SERVICES OR THIS AGREEMENT REGARDLESS OF CAUSE(S) OR THE THEORY  OF LIABILITY, INCLUDING NEGLIGENCE, INDEMNITY, OR OTHER RECOVERY.  UPON WRITTEN REQUEST FROM CLIENT, CONSULTANT MAY NEGOTIATE A HIGHER LIMITATION OF LIABILITY AMOUNT FOR AN  ADDITIONAL FEE.  THIS LIMITATION SHALL NOT APPLY TO THE EXTENT THE DAMAGE IS PAID UNDER CONSULTANT'S COMMERCIAL  GENERAL LIABILITY POLICY.**
> **.  .  .  .**
> **CONSEQUENTIAL DAMAGES.  NEITHER PARTY SHALL BE LIABLE TOT HE OTHER FOR LOSS OF PROFITS OR REVENUE; LOSS OF USE OR OPPORTUNITY; LOSS OF GOOD WILL; COST OF SUBSTITUTE**

---

[2]     This figure includes fees paid to an independent testing lab; out-of-pocket labor costs to remove and replace the fill material and concrete footings; equipment costs to do the work; and Thrash's direct site overhead and home office overhead incurred for every day that the project was shut down until the rework was complete.

**FACILITIES, GOODS OR SERVICES; COST OF CAPITAL; OR FOR ANY SPECIAL CONSEQUENTIAL, INDIRECT, PUNITIVE, OR EXEMPLARY DAMAGES.**

Thrash has now moved for partial summary judgment, contending that both of these provisions are unenforceable under Mississippi law. Terracon has responded and filed its own motion for partial summary judgment, seeking enforcement of these provisions.

In support of its motion, Thrash notes that among factors courts have identified as bearing on the determination of whether a particular limitation of liability clause is enforceable is whether the party against whom the provision is sought to be enforced was actually free to bargain during contract negotiations, see 6 Philip L. Bruner & Patrick J. O'Connor, Jr., Construction Law, § 19:52.69 (2011); the amount of the limitation compared to the scope of the potential liability of the party seeking enforcement of the provision, see TSI Seismic Tenant Space, Inc. v. Superior Court, 56 Cal. Rptr. 3d 751 (Cal. Ct. App. 2007); and whether there are other conflicting provisions within the same document, see Shorr Paper Prods., Inc. v. Aurora Elevator, Inc., 555 N.E.2d 735, 736 (Ill. Ct. App. 1990). It contends that all of these factors counsel against enforcement of the limitation of liability provision. Further, it asserts that because the provision effectively provides for indemnity to Terracon for its own negligence, then it is void and unenforceable under Mississippi's anti-indemnity statute, Miss. Code Ann.

§ 31-5-41.  The court considers these arguments in turn.

Thrash is certainly correct that a party's ability to negotiate with respect to a clause that limits liability (which here would include the limitation of liability clause as well as the waiver of consequential damages provision), bears directly on the enforceability of such provision.  Indeed, under Mississippi law, "[c]lauses that limit liability are given strict scrutiny ... and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties."  Pitts v. Watkins, 905 So. 2d 553 (Miss. 2005) (quoting Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So. 2d 748, 754 (Miss. 2003)).  See also Turnbough v. Ladner, 754 So. 2d 467, 469 (Miss. 1999) (stating that limitation of liability clauses are not enforced unless "fairly and honestly negotiated and understandingly entered into" and "are not upheld unless the intention of the parties is expressed in clear and unmistakable language").  Thrash also correctly notes that "[w]hen a project implicates the public interest, courts are even less deferential to any limitations of liability."  Lyndon Prop. Ins. Co. v. Duke Levy and Assocs., LLC, 475 F.3d 268, 272 (5th Cir. 2007) (citing Kroger Co. v. Chimneyville Props., Ltd., 784 F. Supp. 331, 348-49 (S.D. Miss. 1991)).  However, Thrash does not indicate in what manner its contract with Terracon could be found to implicate public interest.  Nor does it suggest that the limitation of

liability clause in its contract with Terracon somehow escaped its notice during the contracting process or claim that it did not understand the meaning and intended consequence of the provision. Thrash does argue that the limitation of liability ought not be enforced because it was "not negotiable." Yet it has offered no evidence in support of this assertion, which is belied by the contract itself. The contract plainly states that upon Thrash's written request, Terracon "may negotiate a higher limitation of liability for an additional fee." Thrash does not challenge Terracon's proof that Thrash did not make any written request to negotiate a higher limitation of liability or otherwise attempt to negotiate with Terracon at all with respect to the limitation of liability clause. Particularly in light of this, the court cannot accept Thrash's unsupported assertion that the provision at issue was not fairly and honestly negotiated. See Marbro, Inc. v. Borough of Tinton Falls, 297 N.J. Super. 411, 419, 688 A.2d 159, 163 (1996) (finding party was justified in relying on inclusion of limitation of liability where other party offered no evidence to suggest it was powerless to negotiate terms of agreement or to show that it even addressed the issue during negotiations).

In Federal Insurance Co. v. General Electric Co., Civil Action No. 2:08cv156KS-MTP, 2009 WL 4728696 (S.D. Miss. Dec. 3, 2009), Judge Keith Starrett considered and rejected a challenge to a provision which purported to limit a party's liability to a

project owner to the price stated in the contract for the work to

be performed, and which provided that neither party would have any

negligence or other tort liability to the other arising from the

contract (although it excepted claims by third parties for

personal injury due to either party's negligence).  He reasoned as

follows:

> The Renovation Contract was formed between two
> sophisticated, commercial parties of equal bargaining
> power.  The language appeared in bold, capitalized print
> in a three page document listing "General Conditions" of
> the Renovation Contract.  The public interest is not
> implicated because the clause still allows suits by
> third parties for personal injury arising from GE's
> negligence.  Finally, the hospital had a right to seek
> damages up to the cost of the contract for any breach of
> GE's contractual duties.  Therefore this Court holds
> that the clause effectively bars FIC's claim against GE
> for any negligent design arising under the Renovation
> contract.

Id.  The same is true of the contract between Thrash and

Terracon.[3]

Thrash next argues that the court ought to find the

limitation of liability provision unenforceable because it

---

[3]     These facts also distinguish this case from Turnbough v.
Ladner, 754 So. 2d 467 (Miss. 2000), cited by Thrash.  Ladner
involved an anticipatory release executed by a scuba diving
student in favor of his diving instructor before a dive which
purported to release the instructor for any personal injuries the
student might sustain as a result of the instructor's negligence.
Id. at 468.  The court found that as the "broad waiver of
negligence provision" appeared in a "preprinted contract [that]
was not negotiated" and which the student did not fully
comprehend, the provision was unenforceable.  Id. at 470.  The
circumstances in Ladner do not remotely resemble those presented
in this case.

conflicts with other provisions in the contract, including a
mutual indemnity and hold harmless provision, a provision
warrantying Terracon's services, and the waiver of consequential
damages provision.  The Mississippi Supreme Court has stated that
"a contract should be read as a whole, giving meaning and effect
to each provision in a manner which harmonizes with the other
terms of the contract."  <u>Yazoo Properties v. Katz & Besthoff No.</u>
<u>284, Inc.</u>, 644 So. 2d 429, 434 (Miss. 1994) (citations omitted).
In the court's opinion, the provisions cited by Thrash can be
harmonized.

Thrash argues that since the agreement's indemnity provision
states that both parties will indemnify and hold the other
harmless "for *all* claims, losses, damages, and expenses to the
extent such claims, losses, damages, or expenses are caused by
their negligent acts, errors, or omissions," (emphasis added),
then the limitation of liability provision is necessarily
inconsistent.  However, the limitation of liability clause
directly references Terracon's indemnification obligation, stating
plainly that the $50,000 limit applies "REGARDLESS OF ... THE
THEORY OF LIABILITY, INCLUDING ... INDEMNITY."

Furthermore, as Terracon correctly notes, in the context of
first-party claims, the indemnity provision, as written, cannot be
inconsistent with the limit of liability provision, as the
indemnity clause does not apply to first-party claims.  The

indemnity provision recites that each party will indemnify and hold harmless the other "from and against *legal liability* for all claims, losses, damages, and expenses" to the extent caused by their negligent acts and omissions.  (Emphasis added).  Thus, before a claim of indemnity can arise under the contractual indemnity provision, Thrash must first have incurred legal liability to a third party.  <u>See Hopton Bldg. Maintenance, Inc. v. United Parcel Service, Inc.</u>, 559 So. 2d 1012, 1013-1014 (Miss. 1990).  As Thrash is not seeking indemnity for legal liability for any claim made by a third party but rather damages for breach of contract, the agreement to indemnify "against legal liability" is inapplicable.

Thrash also argues that the limitation of liability provision conflicts with Terracon's representation in the contract that it would perform the services required by the contract "in a manner consistent with that level of care and skill ordinarily exercised by members of the profession."  Thrash submits that this provision conflicts with the limitation of liability provision the same way that the defendant's "good and workmanlike manner" guaranty conflicted with a limitation of liability provision in <u>Shorr Paper Products, Inc. v. Aurora Elevator, Inc.</u>, 555 N.E.2d 735 (Ill. Ct. App. 1990).  <u>Shorr</u> is distinguishable, however, in that it involved an exculpatory clause which purported to absolve Aurora of any liability for breach of its duties under the contract,

which the court found conflicted with a provision of the contract which required that Aurora perform its duties in a "good and workmanlike manner." The court reasoned that "if Aurora were not liable for failing to perform its obligations sufficiently," then Aurora's duties under the agreement would become "illusory and meaningless." 555 N.E.2d at 738.

In contrast to <u>Shorr</u>, the present case does not involve an exculpatory clause which would absolve Terracon from all liability for a breach of its duty to "perform the Services [required by the contract] in a manner consistent with that level of skill and care ordinarily exercised by members of the profession." Rather, the contract places an agreed limit on Terracon's liability for any such breach based on the parties' evaluation of "the risks and rewards associated with the project, including consultant's fee relative to the risks assumed...." Contrary to Thrash's urging, enforcement of this limit of liability would not deprive Thrash of the benefit of its bargain in the event of Terracon's breach of this duty and thus render Terracon's duty illusory; rather, enforcement of the provision would provide Thrash precisely the remedy it bargained for in the event of any such breach.

There is likewise no merit to Thrash's contention that the limitation of liability clause conflicts with the waiver of consequential damages provision, which it describes as "completely disclaim[ing] any liability." Clearly, the sections are not

11

incompatible:  The limitation of liability provision simply limits

recovery for the damages which are not subject to the

consequential damages waiver.

Thrash next argues that Terracon's $50,000 limitation of

liability should be held unenforceable on the basis that it is

disproportionate to the $300,000 in actual harm caused by

Terracon's breach.  Thrash contends that Terracon's attempt to

diminish its liability to less than one-fifth of the actual

damages is disproportionate by any measure.  However, this is not

the appropriate inquiry.  Courts considering the issue have

consistently held that a limitation of liability will be found

unenforceable if it establishes a limitation of liability that "is

so minimal compared to [a party's] expected compensation as to

negate or drastically minimize [such party's] concern for the

consequences of a breach of its contractual obligations."  Valhal

Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 204 (3d Cir. 1995)

(holding that proper measure does not compare liability cap to

final verdict but rather to party's expected compensation, and

opining that cap of greater of $50,000 or design professional's

$7,000 fee, while arguably "nominal when comparted to the final

verdict," "[did] not immunize [party] from the consequences of its

own actions"); see also Fort Knox Self Storage, Inc. v. Western

Technologies, Inc., 142 P.3d 1 (N.M. Ct. App. 2006) (rejecting

position that correct measure of whether cap is so small as to

render clause unenforceable is the difference between damages suffered and the cap and finding that correct measure is difference between cap and expected compensation and finding that cap at greater of engineering firm's $1450 fee or $50,000 exposed it to substantial liability); Marbro, Inc. v. Borough of Tinton Falls, 688 A.2d 159 (N.J. Super. Ct. 1996) (finding that agreed-upon provision limiting engineering firm's potential liability for professional negligence to its fee of $32,500 provided adequate incentive to perform). Since Terracon's fees were $14,900, Terracon's assumed risk of $50,000 liability is more than three times the fees under the contract and provided adequate incentive for Terracon's performance under the contract.

Thrash finally argues that the limitation of liability provision violates Mississippi Code Annotated § 31-5-41, which states, in pertinent part:

> With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise and/or agreement contained therein to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

Most courts that have considered the issue have concluded that a limitation of liability clause is different from an indemnity and hold harmless clause and that consequently,

13

statutory restrictions on anti-indemnity clauses do not apply to limitation of liability clauses.  For example, in <u>Valhal Corp. v. Sullivan Associates, Inc.</u>, 44 F.3d 195 (3d Cir. 1995), the contract between a developer and an architectural firm hired to perform a feasibility study of property the developer was interested in purchasing contained a limitation of liability clause which purported to limit the architect's liability to the developer and all contractors and subcontractors on the project due to the architect's negligence to the greater of $50,000 or the architect's fee for services rendered.  After first rejecting the developer's argument that the provision was contrary to general public policy, the court considered a further argument that the provision was contrary to the specific public policy expressed in a Pennsylvania statute declaring void and unenforceable any agreement by an owner, contractor, subcontractor or supplier to indemnify or hold harmless an architect for damages arising out of, *inter alia*, the architect's preparation or approval of opinions, reports, or specifications, or the giving or the failure to give directions or instructions.  <u>Valhal</u>, 44 F.3d at 204 (citing 68 Pa. Stat. Ann. § 491 (Purdons 1994)).  The court first observed that "there are (real) differences between a contract which insulates a party from liability," such as exculpatory clauses and indemnity and hold harmless clauses, "and one which merely places a limit upon that liability," <u>id</u>. at 202.  And it

14

found that the terms of the statute pertained only to indemnity and hold harmless provisions and not to limitation of liability provisions. Id. at 205 ("Those differences preclude an assumption that a statute expressing a prohibition against indemnity and hold harmless provisions announces a public policy against something as distinct and accepted as limitation of liability clauses.").

The court in <u>Fort Knox Self Storage, Inc. v. Western Technologies, Inc.</u>, 142 P.3d 1 (N.M. Ct. App. 2006), came to the same conclusion. There, the contract by which an engineering firm, Western, was hired to provide geotechnical engineering services in evaluating the subsurface conditions of a proposed building site contained a limitation of liability clause purportedly limiting Western's liability to the greater of $50,000 or the amount of its $1,750 fee under the contract. The subject provision stated:

> NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, [WESTERN'S] TOTAL AGGREGATE LIABILITY IN CONNECTION WITH THIS AGREEMENT AND WORK PERFORMED HEREUNDER SHALL BE STRICTLY LIMITED TO AN AMOUNT EQUAL TO THE GREATER OF $50,000 OR THE TOTAL CONTRACT PRICE PAID TO [WESTERN] UNDER THIS AGREEMENT ... WHETHER SUCH LIABILITY IS ASSERTED FOR BREACH OF REPRESENTATION OR WARRANTY, UNDER ANY INDEMNITY, IN ANY OTHER RESPECT UNDER OR FOR BREACH OF CONTRACT, OR AS A LIABILITY ARISING IN TORT OR BY STATUTE.

Id. at 3. Following construction, the property owner began to notice cracks in the building and parking lot and sued to recover over $350,000 for property damages and attorney's fees due to

Western's alleged negligence.  In response to Western's motion for partial summary judgment seeking enforcement of the limitation of liability provision, the owner argued the provision was unenforceable because it violated a New Mexico anti-indemnification statute which prohibited parties to construction contracts from agreeing to indemnify any entity for bodily injury or property damage caused by its own negligence.  Id. at 4 (citing NMSA 1978, § 56-7-1 (1971)).  The trial court had held that the contract's limitation of liability violated the statute, reasoning that "[Fort Knox] ends up indemnifying [Western] if the losses are more than [$]50,000, because they don't get to collect them from [Western]."  Id.  The appeals court reversed, stating,

> We do not read Section 56-7-1 as prohibiting a limitation of liability based on one's own negligence but as prohibiting the avoidance of all liability for one's own negligence.  See [Sierra v. Garcia, 106 N.M. 573, 576, 746 P.2d 1105, 1108 (1987)] (explaining that Section 56-7-1 provides "that liability arising in whole or in part from an indemnitee's negligence ... may not be contracted away by an indemnity agreement").  The limitation of liability clause in this case does not seek to contract away all liability for Western's negligence but seeks to limit the amount of damages Western must pay for its own negligence.  The contract does not indemnify Western against its own negligence.  Indeed, it provides that Western may be liable for damages, based on its own negligence, that are twenty-eight times higher than the amount of the contract.

Id. at 5.

Similarly, in 1800 Ocotillo, LLC v. WLB Group, Inc., 196 P.3d 222 (Ariz. 2008), the court held that an anti-indemnity statute

16

governing architect-engineer professional services contracts did

not apply to a limitation of liability clause.  There, a survey

prepared by an engineering firm failed to accurately reflect the

interests in a right-of-way that ultimately resulted in the

developer's being denied building permits, which in turn resulted

in increased costs from construction delays and additional

engineering services and designs.  Id. at 223.  In response to the

developer's claim for recovery of these damages, the engineering

firm argued that its liability was limited to $14,242, the amount

of its fee, under the parties' contract.  Id. at 224.  In

response, the developer invoked Arizona's anti-idemnification

statute, which declared void as against public policy a clause in

an architect-engineer professional service contract "that purports

to indemnify, to hold harmless or to defend the promisee from or

against liability for loss or damage resulting from the sole

negligence of the promisee...."  Id. (quoting A.R.S. § 32-1159

(2008)).  Citing Valhal, the court concluded that the anti-

indemnification statute concerned "attempts to shift *all* liability

for one's own negligence to another party," id., and hence was

inapplicable to the limitation of liability clause, which merely

*limited* a party's liability for its negligence, id.  The court

reasoned,

> The policy underlying the anti-indemnification statute
> clarifies why the distinction between indemnity and
> liability limitation is important.  Anti-indemnification

17

> statutes are primarily intended to prevent parties from
> eliminating their incentive to exercise due care. <u>See</u>
> [<u>Valhal</u>, 44 F.3d] at 203-07. Because an indemnity
> provision eliminates all liability for damages, it also
> eliminates much of the incentive to exercise due care.
>       The provision in the WLB/Ocotillo contract does not
> completely insulate WLB from liability, as would an
> indemnity or hold harmless provision. ...  The provision
> merely limits liability.

<u>Id</u>. The court concluded that the limitation of liability clause

did not remove the engineering firm's incentive to exercise due

care since it stood to lose its entire fee, which was "the very

thing that induced it to enter into the contract in the first

place".  <u>Id</u>.

      And in <u>Mabro, Inc. v. Borough of Tinton Falls</u>, 688 A.2d 159

(N.J. Super. Ct. 1996), the court, following the reasoning in

<u>Valhal</u>, also enforced a provision limiting an architect's

liability for professional negligence in the face of a state

statute which prohibited any agreement to indemnify or hold

harmless an architect for his sole negligence as against public

policy.  The court held that the statute applied only to indemnity

and hold harmless clauses, and did not express a blanket public

policy against engineers contractually limiting their liability.

<u>Id.</u> at 163-64.

      There is authority to the contrary.  At issue in <u>Ladner at</u>

<u>McEver, L.P.</u>, 284 Ga. 204, 663 S.E.2d 240 (2008), was a provision

in a contract between a developer, Lanier, and an engineering

firm, Planners and Engineers Collaborative (PEC), for the design

of a storm-water drainage system for an apartment building which limited the firm's liability to "all contractors and subcontractors, or any third parties for any and all claims expenses from any causes of causes" to the firm's total fee for services rendered on the project. After construction was completed, Lanier discovered erosion and other physical damage which was attributed to PEC's negligent design of the storm-water drainage system. Lanier sued PEC for negligent construction of the drainage system and breach of warranty to recoup approximately $500,000 for repairs to the system. PEC sought partial summary judgment, asserting its liability was limited to $80,514, the amount of its fee for services. The trial court granted the motion, but the Georgia Supreme Court reversed, finding the limitation of liability clause violated Georgia public policy as set forth in the state's anti-indemnification statute, which provided that an agreement in connection with a construction contract "purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury or damage to property caused by or resulting from the sole negligence of the promisee ... is against public policy and is void and unenforceable." Id. at 242 (quoting OCGA § 13-8-2(b)). The court reasoned:

> Georgia law defines indemnity as "the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his

19

benefit." (Citation and punctuation omitted.) <u>Holmes v. Clear Channel Outdoor</u>, 284 Ga. App. 474, 477, 644 S.E.2d 311 (2007). Although the clause at issue in this case does not exculpate PEC from all monetary liability, it is an indemnity as defined above and as prohibited by OCGA § 13-8-2(b), particularly regarding claims for which PEC may be solely negligent for injuries to third parties (i.e., members of the public who are not agents or construction subcontractors of Lanier or PEC). This is because the clause applies to "any and all claims" by third parties and shifts all liability above the fee for services to Lanier no matter the origin of the claim or who is at fault. Thus, while a third party is not precluded from suing PEC for any negligent actions in constructing the storm-water drainage system, the clause at issue here allows PEC to recover any judgment amount entered against it from Lanier once the $80,514 threshold has been surpassed, including judgment amounts on third-party claims for which PEC is solely negligent.

<u>Id.</u> at 243. The court continued:

> In this case, the $80,514 threshold has already been met insofar as Lanier has expended a quarter of a million dollars to repair the drainage system. As a result, PEC will be able to recover from Lanier losses for all future third-party claims. This complete avoidance of liability to third parties for sole negligence in a building contract is exactly what OCGA § 13-8-2(b) prohibits. ... Nothing in OCGA § 13-8-2(b) permits a construction party to shift its third-party liability for its sole negligence to another contractor, no matter how savvy the parties or how high the damages cap.

<u>Id</u>.

In the case at bar, Terracon argues in keeping with the reasoning in <u>Valhal</u>, <u>Fort Knox</u>, <u>1800 Ocotillo</u> and <u>Mabro</u> that since limitation of liability clauses are separate and distinct from indemnity and hold harmless clauses, § 31-5-41 is inapplicable. It further notes that Thrash has not sued Terracon for negligence, but rather only for breach of contract (including breach of the

20

duty of good faith and fair dealing), its implication presumably being that even if the limitation of liability provision might conceivably be characterized as an indemnity provision, the anti-indemnification statute still would have no application here since no negligence claim has been made in this case.

In the court's opinion, the Mississippi Supreme Court, like most courts, would more likely view a limitation of liability clause as beyond the purview of § 31-5-41. But regardless of how the statute is interpreted, it does not preclude enforcement of the limitation of liability provision in the circumstances of this case. That is to say, even if the limitation of liability provision between Thrash and Terracon might be viewed as running afoul of the anti-indemnification statute to the extent it would operate to insulate Terracon from liability, in part, for losses caused by its own negligence, the fact is, Thrash has made no claim against Terracon for negligence. Rather, it has asserted only claims for breach of contract. By its terms, the statute only renders void as against public policy any agreement "to indemnify or hold harmless another person from that person's own negligence." It does not purport to invalidate an agreement between contracting parties to limit one party's liability to the other for breach of the contract.[4]

_____

[4] The parties dispute whether Thrash's claim qualifies as a claim for "indemnity" within the contemplation of the statute. The court need not resolve this issue since this case does not

The court recognizes, but is not persuaded by Thrash's argument that its breach of contract claims are claims for negligence, as they are "based on negligent acts, errors and omissions by Terracon." In <u>Palmer v. Orkin Exterminating Company, Inc.</u>, 871 F. Supp. 912 (S.D. Miss. 1994), this court rejected the plaintiff's attempt to avoid a limitation of liability by alleging a "negligent breach of contract," stating, "the negligence which Plaintiff attributes to Orkin stems directly from the duties imposed by contract, not from any duty owed to Plaintiff independent of the contract. It must be concluded, then, that Orkin 'merely breached the terms of the contract, the remedies for which are permissibly limited by the contract language itself.'" <u>Id</u>. at 914 (quoting <u>Smith v. Orkin</u>, 791 F. Supp. 1137, 1144 (S.D. Miss. 1990)).

Notably, in <u>Nathaniel Shipping, Inc. v. General Electric Co.</u>, 920 F.2d 1256 (5th Cir. 1991), the Fifth Circuit, in the context of considering whether a shipowner had a right to seek indemnity for delay damages caused by a subcontractor's negligence, explained as follows:

> [W]hen ... negligence complained of is simply failure to live up to the terms of its contract, such as incomplete or late performance, then what is really being alleged is that the contractor has breached its contract in failing to get the work done properly. ...
> This scenario changes when there is property damage or personal injury caused by the subcontractor's

involve a claim for indemnity for alleged *negligence* by Terracon.

> negligence.  The suit is no longer merely a cause of
> action in contract, but a tort action.  The [owner] is
> no longer just complaining that its contract was
> breached, and that it did not get the benefit of its
> bargain, but that because of the subcontractor's
> negligence, there was damage to property or personal
> injury, giving rise to damages in tort. ... [T]here are
> valid public policy reasons for allowing the shipowner
> to be indemnified by the tortfeasor/subcontractor. ...

Id. at 1263-64.  Here, Thrash alleges nothing more than a breach

of contract.  There is no tort claim for negligence, nor is there

any basis for one.  Indeed, in this case, in contrast to every

case cited by the parties, there was no damage to property or

personal injury that would provide a basis for a negligence claim.

Upon discovering that the fill material did not meet the

contract's compaction standards, Thrash immediately undertook

corrective action before proceeding with construction.  Thus, this

case does not present a situation where one is seeking immunity

for one's own negligence.

In M.D. Smith v. Seaboard Coast Line Railroad Co., 639 F.2d

1235 (5th Cir. 1981) (Unit B), the Fifth Circuit observed with

respect to Georgia's anti-indemnification statute that "while the

statute may void one clause of a contract, this result does not

taint the remaining separable obligations imposed by the

agreement," and that "[i]f an indemnity clause is broader in

application than this statutory prohibition, the unlawful portion

may be excised, and the remainder, if otherwise valid is still

controlling."  Id. at 1242.  Along these lines, the limitation of

liability provision in the parties' agreement herein recites that the limitation of liability is intended by the parties to operate "to the fullest extent permitted by law."  Numerous courts have found that such language permits enforcement of a limitation of liability to the extent it does not offend a state's anti-indemnification statute.  See, e.g.,, Callahan v. A.J. Welch Equip. Corp., 634 N.E.2d 134, 137 (Mass. Ct. App. 1994) (finding indemnity provision in construction contract which offended statute not entirely void because of the phrase "to the fullest extent permitted by law"); Giangarra v. Pav-Lak Contracting, Inc., 866 N.Y.S.2d 332, 333-34 (N.Y. App. Div. 2008) (finding that while an indemnity provision which would otherwise be void under statute preventing party's indemnity for its own negligence, phrase "to the fullest extent permitted by law" allowed enforcement of portions of provision not in violation of statute); Bennett v. Bank of Montreal, 554 N.Y.S.2d 869, 871-72 (N.Y. App. Div. 1990) (construing the provision in accordance with the statute and allowing recovery not in violation of the statute because of the phrase "to the extent permitted by law"); Brown v. Two Exchange Plaza Partners, 539 N.Y.S.2d 889, 894 (N.Y. App. Div. 1989) (where contractor and subcontractor were jointly negligent and contract required subcontractor to indemnify contractor for its own negligence in violation of statute, finding that the phrase "to the extent permitted by law" prevented indemnification for portion

of fault attributable to contractor, but allowed indemnification for portion of fault attributable to subcontractor); Vecellio & Grogan, Inc. v. Piedmont Drilling & Blasting, Inc., 644 S.E.2d 16, 21 (N.C. Ct. App. 2007) (where indemnity agreement contains both a clause that violates statute and the phrase "[t]o the fullest extent permitted by law," the provision can be enforced by removing the offending clause); Cox v. Lumbermens Mut. Cas. Co., 439 N.E.2d 126, 130 (Ill. App. Ct. 1982) (finding that the phrase "[t]o the extent permitted by applicable law" required the court to assume that the parties intended the indemnity agreement to apply only to the extent that it would not violate statute); Hagerman Const. Corp. v. Long Elec. Co., 741 N.E.2d 390, 393 (Ind. Ct. App. 2000). In the court's opinion, the Mississippi courts would likewise enforce the parties' contract to the extent permitted.

So, even if the court were to assume for the sake of argument that the Mississippi courts would conclude that the limitation of liability provision could be held to be an indemnity provision entitling Terracon to indemnity for its negligence and thus violative of the public policy expressed in § 31-5-41, it is nevertheless enforceable to the extent Thrash seeks recovery based on Terracon's breach of contract, and the court rejects Thrash's contrary position.

Thrash next argues that some of the damages claimed by Thrash are consequential damages and therefore barred by the waiver of consequential damages in the parties' contract, which states:

> Neither party shall be liable to the other for loss of profits or revenue; loss of use or opportunity; loss of good will; cost of substitute facilities, goods, or services; cost of capital; or for any special, consequential, indirect punitive, or exemplary damages.

Thrash argues that the damages it seeks to recover from Terracon are direct or general damages, not consequential damages, and that it is for this reason entitled to partial summary judgment with respect to Terracon's defense based on this provision. Thrash further submits that to the extent any of its damages can be labeled as consequential damages, the clause relied on by Terracon is unenforceable under Mississippi law because it does not define what is meant by, or included within "consequential damages," and accordingly is too vague to be enforced.

As to the latter proposition, Terracon points out in its response to Thrash's motion, and in support of its own motion, that some of the damages claimed by Thrash are specifically excluded by name in the waiver provision, including damages for lost profits in the amount of $42,191.07, and damages for "loss of use" totaling $103,420.71 (including $33,950 for the loss of use of Thrash's home office over a period of seventy days; $583.33 for the loss of use of cell phones and $467.44 for the loss of use of the internet for those seventy 70 days). Terracon submits that

Thrash's claim for recovery of these items, which clearly fall within the contract's denomination of consequential damages, should be dismissed.[5]  Thrash claims in reply that contrary to Terracon's defense in which it claims that all Thrash's damages are consequential damages, in fact, most of its damages are not consequential damages, including "direct jobsite costs for soil remediation that directly resulted from Terracon's negligent testing," and "damages for time lost and delay directly resulting from Terracon's breach."  Thrash submits it is entitled to partial summary judgment "with regard to damages that directly resulted from Terracon's breach of contract."

Thrash is not entitled to summary judgment as to any damages, since it has not been established that Terracon's breach of contract resulted in a loss, and indeed, since it did not move for summary judgment in this regard.  Rather, Thrash has moved for partial summary judgment on Terracon's assertion that the waiver of consequential damages provision entitles it to dismissal of Thrash's claim for any consequential damages.  The court concludes that the waiver of consequential damages provision is enforceable;

---

[5]     Terracon has requested that the court defer addressing the remaining $215,015.07 sought by Thrash, since as of the date of briefing on the present motion, discovery had not been had concerning the nature of the specific damages included in this figure.  Terracon has insufficient information at this time to address whether these claims are directly related to the removal and replacement of the six feet of fill.  Thrash did not respond to Terracon's assertion in this regard.

and it concludes that Thrash's claim for lost profits and loss of use qualify as consequential damages as specifically described in the contract. Beyond that, the court is unable at this time to determine the extent to which additional damages claimed by Thrash constitute direct loss or consequential damages, and it thus will deny the parties' cross-motions for summary judgment as to all remaining categories of damages sought by Thrash.

Based on all of the foregoing, it is ordered that Terracon is entitled to partial summary judgment to the extent it seeks an adjudication that the limitation of liability and waiver of consequential damages provisions in the parties' contract is enforceable, and it is ordered that Thrash's claims for lost profits and loss of use, totaling $145,611.78, are for consequential damages and hence are not recoverable in this cause. It is further ordered that Thrash's motion for partial summary judgment is denied.

SO ORDERED this 25th day of June, 2012.

_/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE